## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **GABRIELLE DAVIS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-24-1804** |
| **v.** | * | |
| | * | |
| **BMW FINANCIAL SERVICES NA** | | |
| **LLC, et al.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Currently pending before the Court is defendant BMW Financial Services NA, LLC's ("BMW FS") Motion to Compel Arbitration and Stay Action. ECF No. 12. The motion is fully briefed and ripe for disposition. No hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant the motion.

### I.    BACKGROUND

On December 18, 2020, Gabrielle Davis entered into an installment contract with BMW of Towson to purchase or lease a vehicle. ECF No. 4 at 31; ECF No. 12-3 at 3–8.[1] The contract includes an arbitration clause stating that either party "may choose to have any dispute between

---

[1] The page numbers in citations to the record refer to the page numbers assigned by the ECF system, rather than by any page numbers printed on the underlying document.

[them] decided by arbitration and not in a court or by jury trial." *Id.* at 6. BMW of Towson assigned the contract to defendant BMW Financial Services NA, LLC ("BMW FS"). *Id.* at 7.

On or about November 8, 2023, Davis called BMW FS to discuss whether it received a payment Davis had issued to it by check. ECF No. 4 at 4. Davis spoke with an employee of BMW FS (defendant "Jane Doe"), who "purported to be operating as a customer service representative/advisor on behalf of [BMW FS]." *Id.* Jane Doe checked Davis's account information and informed her that the payment was received and processed but it was received late, And Davis apologized for the lateness. *Id.* at 5. After Davis's apology, Jane Doe "began to lecture and berate" Davis about the late payment. *Id.* Davis listened to Jane Doe but did not respond. *Id.* Jane Doe asked Davis, "Do you understand? Did you understand what I said to you?" *Id.* at 6. Davis did not provide an immediate response. *Id.* Jane Doe then said, "Are you kidding me? Are you f*****g kidding me? You f*****g n****r!" *Id.*

Davis is an African American female and a veteran who suffers from post-traumatic stress disorder ("PTSD"). *Id.* at 4, 6. Jane Doe's outburst shocked Davis and triggered her PTSD, clinical depression, and anxiety, for which she received medical treatment. *Id.* at 6, 8.

Davis contacted BMW FS's customer service department and filed a formal complaint about Jane Doe. ECF No. 4 at 7. BMW refused to give Davis a copy of the recording of her call with Jane Doe or provide Jane Doe's name or contact information. *Id.* at 7–8.

On April 22, 2024, counsel for BMW FS sent a letter to Davis's counsel regarding the dispute between the parties. ECF No. 12-3 at 2. In the letter, BMW FS's counsel pointed out the

volitional arbitration clause in Davis's installment contract and demanded that she arbitrate her claims in accordance with the agreement. *Id.*

On June 10, 2024, Davis filed a civil complaint in the Circuit Court of Maryland for Baltimore City asserting claims against BMW FS and Jane Doe in ten counts, including various tort claims and a claim for breach of contract. *Id.* at 9–31. Plaintiff seeks compensatory damages in the sum of $100,000,000, punitive damages for $100,000,000, and attorney's fees and costs. *Id.* at 32–33.

On June 21, 2024, BMW FS removed the matter to this Court. ECF No. 1. On July 9, 2024, BMW FS filed a Motion to Compel Arbitration and Stay Action, attaching a memorandum of law and several exhibits, including a copy of Davis's installment contract. ECF No. 12. On July 12, 2024, Davis filed a response in opposition to the motion. ECF No. 13. BMW FS filed a reply. ECF No. 14.

## II.    STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that, in any contract involving interstate commerce, a provision in which the parties agree to arbitrate their disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided  . . . ." 9 U.S.C. § 2. The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, 631 (1985)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."). "When the parties have agreed to an arbitration clause, however, courts apply 'a presumption of

arbitrability,' such that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Waterford Inv. Servs., Inc. v. Bosco*, 682 F.3d 348, 353 (4th Cir. 2012) (quoting *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432 (4th Cir. 2004)), and *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 572 (4th Cir. 1998) (holding that policy favoring arbitrability articulated in *AT & T Technologies* "is not limited to labor contracts"). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone*, 460 U.S. at 24–25. The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91 (2000). The party may show that the claims are unsuitable for arbitration by establishing that the agreement to arbitrate is invalid or otherwise does not cover the relevant claims.

"Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 501 (4th Cir. 2002). As such, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening the [FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, state law defenses must not be applied "in a fashion that disfavors arbitration," and they must not "rely on the uniqueness of an agreement to arbitrate" as grounds for invalidating it. *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 341 (2011) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 (1987)).

### III.   ANALYSIS

In its motion, BMW FS seeks an order compelling Davis to arbitrate her claims against it and staying this action pending arbitration. ECF No. 12-1 at 27. Here, for the reasons explained below, the Court finds the written arbitration agreement between the parties to be valid and Plaintiff's claims to fall within its scope.[2] Accordingly, Defendant's motion will be granted.

#### A.  Validity of the Arbitration Agreement

Davis disputes the validity of the arbitration provision in her contract, without citation to legal authority, stating that the installment contract is "an adhesion contract and is unenforceable on the issue of arbitration." ECF No. 13 at 1. This Court is not persuaded.

There is no dispute that the contract is governed by Maryland law. ECF Nos. 4 & 12-1. Under Maryland law, "to be binding and enforceable, an arbitration agreement must be a valid contract[]" and "must be supported by consideration." *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (citing *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656 (Md. 2003)). The Supreme Court of Maryland has recognized that "mutual promises to arbitrate act as 'an independently enforceable contract[,]'" where "'each promise provides consideration for the other.'" *Cheek*, 835 A.2d at 665 (citation omitted).

The arbitration provision at issue here demonstrates a mutual exchange of promises to arbitrate should either party demand arbitration. See ECF No. 12-3 at 6. Davis's characterization of her contract with BMW FS as one of adhesion, without more, is insufficient to support a finding that it is invalid and unenforceable. *See Walther v. Sovereign Bank*, 872 A.2d 735, 746 (Md. 2005)

---

[2]    "Where a court finds a valid written arbitration agreement and a dispute within the scope of the agreement, it must compel arbitration and stay the litigation. *Stoner v. MacroGenics, Inc.*, Civ. No. SAG-23-02529, 2024 WL 327085, at *1 (D. Md. Jan. 29, 2024) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–50 (1986), and *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997)).

("The fact that a contract is one of adhesion does not mean that either it or any of its terms are invalid or unenforceable.") (quoting *Meyer v. State Farm Fire & Cas. Co.*, 582 A.2d 275, 278 (Md. 1990)). Davis offers no other reason to question the validity of the contract.

Under Maryland law, a contract may be deemed void and unenforceable if it is unconscionable. *Aerotek, Inc. v. Obercian*, 377 F. Supp. 3d 539, 553 (D. Md. 2019) (citing *Walther*, 872 A.2d at 743–44). "An unconscionable bargain or contract has been defined as one characterized by 'extreme unfairness,' which is made evident by '(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'" *Walther*, 872 A.2d at 743 (quoting *Black's Law Dictionary* (8th ed. 2004)).

Importantly, "[a] contract of adhesion is not automatically deemed *per se* unconscionable." *Id.* at 746. An arbitration agreement must be both procedurally and substantively unconscionable for a court to decline enforcement as unconscionable. *Rankin v. Brinton Woods of Frankford, LLC*, 211 A.3d 645, 655 (Md. Ct. Spec. App. 2019) (citing *Doyle v. Fin. Am., LLC*, 918 A.2d 1266 (Md. Ct. Spec. App. 2007)).

> Procedural unconscionability "concerns the process of making a contract and includes such devices as the use of fine print and convoluted or unclear language, as well as deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms."
>
> * * *
>
> Substantive unconscionability, on the other hand, "refers to contractual terms that are unreasonably or grossly favorable to the more powerful party and includes terms that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law[.]"

*Id.* at 655–56 (quoting *Stewart v. Stewart*, 76 A.3d 1221 (Md. Ct. Spec. App. 2013)).

Here, the arbitration provision in Davis's installment contract is neither procedurally nor substantively unconscionable. While exhibiting some complexity typical of contracts for major

purchases, the language of the arbitration provision does not lack clarity and is not hidden in fine print or by any means of obfuscation. To the contrary, the provision appears directly under the prominently placed header "ARBITRATION CLAUSE" and then the following appears in red, bold text: "PLEASE REVIEW – IMPORTANT – AFFECTS OUR LEGAL RIGHTS." ECF No. 12-3 at 6. This placement within the six-page installment contract sends a clear signal to the purchaser that the arbitration clause contains important terms that require careful attention. Davis has presented no evidence of having been deceived when presented the contract or any refusal by BMW of Towson[3] to negotiate over its terms. In signing the contract, both Davis and BMW of Towson demonstrated a mutual intent to be bound by its terms. Furthermore, the arbitration provisions gives BMW FS and Davis each the right to demand arbitration of covered disputes. *See id.* Davis fails to demonstrate that the provision is unreasonably or grossly favorable to BMW FS or that it impermissibly alters BMW FS's fundamental legal duties.

The Court notes that Davis invokes the doctrine of unclean hands in her opposition brief. ECF No. 13 at 2. She states that BMW FS's alleged conduct in breaching its contract with Davis "invokes the 'unclean hands' doctrine, making the arbitration clause invalid, improper and unenforceable." *Id.* No authority is cited in support of this proposition, and the basis for Davis's argument is unclear to the Court.

In Maryland, "[t]he clean hands doctrine states that 'courts of equity will not lend their aid to anyone seeking their active interposition, who has been guilty of fraudulent, illegal, or inequitable conduct in the matter with relation to which he seeks assistance.'" *Wells Fargo Home Mortg., Inc. v. Neal*, 922 A.2d 538, 552 (Md. 2007) (citation omitted). The doctrine requires that "the particular matter for which a litigant seeks equitable relief . . . not be marred by any fraudulent,

---

[3] As explained supra, BMW of Towson assigned the contract to BMW FS. *See* ECF 12-3 at 8.

illegal, or inequitable conduct." *Id.* "[F]or the doctrine to apply, 'what is material is not that the [litigant's] hands are dirty, but that [it] dirties them in acquiring the right [it] now asserts.'" *Hollingsworth v. Chateau Bu-De, LLC*, 987 F. Supp. 2d 629, 638 (D. Md. 2013) (quoting *Hicks v. Gilbert*, 762 A.2d 986, 990 (Md. Ct. Spec. App.2000)). The doctrine's purpose is "to protect the courts from having to endorse or reward inequitable conduct." *Id.* (quoting *Roper v. Camuso*, 829 A.2d 589, 609 (Md. 2003)); *see also Space Aero Prod. Co. v. R. E. Darling Co.*, 208 A.2d 74, 88 (Md. 1965) ("[The clean hands doctrine] is applied, not for the protection of the parties, but for the court's own protection.") (citation omitted). Applying the doctrine rests in the court's sound discretion. *Id.*

Davis makes no effort to show how the doctrine applies in this case. She has demonstrated no inequitable conduct on BMW FS's part in its acquisition of its contractual right to arbitration. Davis's unclean hands argument fails.

In sum, the Court finds the installment contract and its arbitration provision to be valid and enforceable.

### B. Compelling Arbitration

In her opposition to BMW FS's motion to compel arbitration, Davis next argues that her claims against BMW FS do not constitute a dispute subject to arbitration. For reasons explained below, the Court disagrees.

To prevail on a motion to compel arbitration under the FAA, the moving party must show "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99,

102 (4th Cir. 1991); *see also Wood v. Uber Technologies, Inc.*, Civ. No. TDC-23-2149, 2024 WL 69926, at *3 (D. Md. Jan. 5, 2024). All four *Whiteside* factors are satisfied in this case.

First, there is a dispute between the parties, as set forth in Davis's pending complaint, ECF No. 4; BMW FS's pending motion, ECF No. 12; and the letter of its counsel to Davis's counsel dated April 22, 2024, ECF No. 12-3 at 2.

Second, there is a written agreement between Davis and BMW FS, as assignee, that includes a binding, elective arbitration clause that applies to disputes between the parties, covering "any claim, dispute or controversy, whether in contract, tort, statute or otherwise, . . . which arises out of or relates to [Davis's] credit application, the sale, purchase, lease, or condition of the Vehicle, this Contract, or any resulting transaction or relationship . . . ." ECF No. 12-3 at 6. The U.S. Supreme Court and U.S. Court of Appeals for the Fourth Circuit have characterized arbitration provisions covering disputes "arising out of or related to" a contract or transaction as "broad" and "capable of expansive reach[.]" *Mey v. DIRECTV, LLC*, 971 F.3d 284, 292–93 (4th Cir. 2020) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (citing cases)). Among the claims asserted in Davis's complaint is a claim for breach of contract—that is, breach of the installment contract containing the arbitration provision—which clearly "arises out of or relates to" that contract. ECF No. 12-3 at 6. All the claims asserted in the complaint arise from a phone call Davis placed to BMW FS concerning payment on the installment contract and, therefore, relates to the contract "or any resulting transaction or relationship." *Id.* The arbitration provision is, thus, at least "susceptible of an interpretation that covers" all the claims asserted in this case, *Waterford Inv. Servs.*, 682 F.3d at

353, and, as permitted by this provision, BMW FS has elected to arbitrate the dispute, *see* ECF No. 12-3 at 2, 6.

Third, the installment contract and transaction at issue in this case all implicate interstate commerce. The term "commerce" as defined in the FAA encompasses "commerce among the several States . . . ." 9 U.S.C. § 1. Here, Davis was a resident of the District of Columbia at the time of the contract and is now a Maryland resident, while BMW FS is a Delaware limited liability company with its principal place of business in New Jersey. *See* ECF Nos. 1, 4, 12-3. The installment contract, transactions, and communications between the parties is clearly within interstate commerce.

Fourth, Davis has failed or refused to arbitrate her claims against BMW FS by first rejecting BMW FS's demand for arbitration, ECF Nos. 12-3 & 12-4; filing suit in the Circuit Court for Baltimore City, ECF No. 4; and then opposing BMW FS's request for arbitration after suit was filed, ECF No. 13.

Thus, BMW FS has satisfied its burden under *Whiteside*. The Court will compel arbitration and order a stay of this litigation without prejudice to an appropriate motion to lift the stay.[4]

---

[4]    In her opposition brief, Davis points out that defendant Jane Doe, whose identity is unknown to her, "has not been served or notified of this matter" and "is not a party to any agreement calling for arbitration." ECF No. 13 at 1. She states that "this case is not bifurcated and Jane Doe is not subject to arbitration[,]" *id.*, as if to suggest that compelling arbitration of her claims against BMW FS in this context would be inappropriate.

Davis cites no authority to support this proposition. The Supreme Court and the Fourth Circuit have long recognized that enforcement of arbitration agreements "may require piecemeal litigation[.]" *Am. Recovery Corp.*, 96 F.3d at 97 (citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985)); *see also Moses H. Cone*, 460 U.S. at 20 ("[FAA] *requires* piecemeal resolution when necessary to give effect to an arbitration agreement.").

"[T]he decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket[.]" *Am. Recovery Corp.*, 96 F.3d at 97 (citing *Moses H. Cone*, 460 U.S. at 20 n.23). Here, considering that Jane Doe has not been served and has not appeared in this matter, the Court will order a stay of this litigation in its entirety. However, the stay will be ordered without prejudice to Davis moving to bifurcate the matter and/or lift the stay as to the claims against Jane Doe.

### IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay the Case

will be GRANTED.

A separate Order will follow.


   11/26/24                                    /S/
Date                                    Matthew J. Maddox
                                        United States District Judge